**FILED**
**CLERK**

6/12/2026 11:44 am

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
KIDDIE ACADEMY DOMESTIC FRANCHISING,
LLC

                              Plaintiff,

           - against -

PARADISE ORGANIZATION CORP. a/k/a
PARADISE ORGANIZATION, INC., SONU
CHADHA and DEEPAK CHADHA,

                          Defendants.
------------------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**

Civil Action
No. 24-02864 (GRB)(JMW)

**GARY R. BROWN, United States District Judge**:

Presently before the Court is a motion for partial summary judgment pursuant to Rule 56

of the Federal Rules of Civil Procedure filed by plaintiff Kiddie Academy Domestic Franchising,

LLC ("plaintiff").  Docket Entry ("DE") 58.  For the reasons stated herein, plaintiff's motion is

GRANTED in part and DENIED in part.

### Factual Background

Based on the parties' submissions, the following relevant facts are undisputed, except as

noted.  Plaintiff owns and operates educational childcare businesses that provide services for

children between the ages of six weeks and twelve years.  Plaintiff has over 300 franchised

locations, including 14 in Nassau and Suffolk Counties.  DE 61 ¶1.

In 1999, defendant Paradise Organization Corp. ("Paradise") entered into a franchise

agreement with plaintiff to operate one of plaintiff's learning centers as a franchisee.  *Id.* ¶8.

After that agreement expired by its terms in 2012, the parties entered into a renewal franchise

agreement (the "Franchise Agreement").  *Id.* ¶21.  Individual defendants Sonu and Deepak

1

Chadha personally guaranteed all of Paradise's obligations outlined in the Franchise Agreement. *Id.* ¶22.

The Franchise Agreement required Paradise to, *inter alia*, remit weekly royalty payments and brand building fund ("BBF") fees to plaintiff, maintain the premises and abide by both in-term and post-term non-compete provisions. DE 61 ¶¶23-25. The Franchise Agreement further provided that "[defendants] will have thirty (30) days after [their] receipt from [plaintiff] of a written notice of default within which to remedy any default under this Agreement." DE 56-16 at 48.

Beginning in 2012, and continuing to 2018, Paradise often submitted payments late, and its arrears grew to a "substantial" number. DE 61 ¶30. As a result, to restructure defendants' debt, the parties entered into a Voluntary Termination Agreement (the "VTA") in connection with two additional documents: a settlement agreement (the "2018 Settlement Agreement") and a promissory note (the "2018 Promissory Note"). *Id.* ¶¶31-32.

Under the VTA, plaintiff could terminate the Franchise Agreement immediately – without providing defendants notice and an opportunity to cure – upon a "New Default" by defendants. DE 56-19 at 2. A New Default was defined by the VTA, in relevant part, as "an event of default of the Franchise Agreement or the [2018 Promissory] Note." *Id.* In other words, the VTA required defendants to satisfy the 2018 Promissory Note and adhere to their contractual obligations under the Franchise Agreement or risk termination of the Franchise Agreement without an opportunity to cure their default. The VTA was to become effective "as of the date executed by [plaintiff]," but plaintiff seemingly never executed the VTA. *Id.* at 5 (VTA signed only by defendants).

The 2018 Settlement Agreement provided that if Paradise was "not [ ] in default of the Franchise Agreement, [and] upon Franchisee's fulfillment of all obligations, terms and conditions set forth in this Agreement and the Ancillary Agreements, the VTA . . . shall become null and void and be of no further force and effect." DE 56-18 at 4.

The 2018 Promissory Note required Paradise to make past due payments totaling $133,934.90 as follows: $44,644.96 by October 31, 2018; $44,644.96 by November 30, 2018; and $44,644.98 by December 31, 2018. DE 56-20 at 2. But defendants admit they were lax about those deadlines – noting in their opposition papers that the 2018 Promissory Note was not paid in full until July 19, 2019. DE 59 at 13 ("the Promissory Note was paid in full in [sic] by July 19, 2019.").[1]

In the ensuing years, Paradise continued to fall behind on payments. As of March 4, 2024, Paradise owed plaintiff more than $48,000. DE 61 ¶43. Compounding the financial concerns, plaintiff also submits that Paradise violated the Franchise Agreement in 2023 and 2024 when it failed to provide plaintiff with the requisite financial information and failed to adequately maintain the premises. *Id.* ¶¶46-48. As a result, on March 4, 2024, plaintiff invoked the VTA to terminate the Franchise Agreement without giving defendants notice and an opportunity to cure. DE 56-33. While the termination was only to become effective on April 3, 2024, the termination was unequivocal, and the time period between March 4 and April 3 was not a period in which defendants could cure their alleged defaults. DE 63 ¶54.

---

[1] This admission deviates from counsel's prior representation in a pre-motion conference letter, wherein counsel stated that "[i]t is **undisputed** that the promissory note was paid on or before December 31, 2018." DE 50 at 2 (emphasis added). This is not the only example of counsel needlessly complicating this matter.

A few days after receiving the termination letter, but before termination became effective, defendants began converting the premises into an independent educational childcare center that would operate under the name "Blooming Buds Learning Center," allegedly in violation of non-competition provisions in the Franchise Agreement. *Id.* ¶¶61-62. The Franchise Agreement prohibited defendants from competing, directly or indirectly, with plaintiff and its franchisees for two years post-termination at: (i) any location within 20 miles of Paradise's Protected Territory; (ii) any location within 20 miles of any other Kiddie Academy location; and (iii) any location within the primary market area served by any business operated by Kiddie or any entity that owned or operated a Franchised Business under plaintiff's marks and the Kiddie Academy System. DE 56-16.

Plaintiff commenced the instant action on April 17, 2024. DE 1. Plaintiff now moves for partial summary judgment on three of its claims: Count II for breach of contract based on Paradise's failure to make timely payments under the Franchise Agreement; Count IV for breach of contract based on Paradise's breach of the non-competition provisions in the Franchise Agreement; and Count I for a permanent injunction enforcing the Franchise Agreement's non-compete provisions. Plaintiff also moves for summary judgment on defendants' remaining counterclaims for (1) breach of contract; (2) violation of the implied covenant of good faith and fair dealing; (3) conspiracy; and (4) a declaratory judgment.[2]

---

[2] Defendants voluntarily dismissed an additional counterclaim for breach of contract at the pre-motion conference on July 21, 2025. That claim alleged that plaintiff breached the Franchise Agreement by refusing defendants' request to participate in the Universal Pre-K program. In yet another example of defendants' counsel unnecessarily multiplying proceedings, counsel initially vigorously refused to drop the counterclaim, despite a clear admission from Sonu Chadha at her deposition that "it was [her] decision" to not participate in the Universal Pre-K program. DE 56-5 at 87:17-20.

4

**Discussion**

**I.     *Standard of Review***

Motions for summary judgment are decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 F. App'x 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

**II.    *Discussion***

**a.  *Breach of Contract Claims***

As a threshold issue, defendants aver that the VTA was inefficacious at the time of termination, and thus, plaintiff did not have the right to terminate the Franchise Agreement without providing defendants notice and an opportunity to cure.  Defendants advance two arguments in support of their position:

First, defendants assert that the VTA never became effective because plaintiff never executed the document, despite an unambiguous condition precedent that required plaintiff to sign the VTA before it became effective.  DE 56-19 at 5 ("the parties hereto have duly executed this Agreement, with the intention that it become effective as of the date executed by [plaintiff].").  But "[e]ven where signatures constitute a condition precedent, the parties can waive the condition explicitly or by their conduct." *DC Mason Builders, Inc. v. Bancroft Construction Co.*, 2018 WL 6179535 at *7 (D. Md. Nov. 27, 2018) (citing *Hovanian Land Inv. Grp. v. Annapolis Towne Ctr. at Parole, LLC*, 25 A.3d 967, 983 (Md. 2011)).[3]  "[U]nder Maryland law, a party to a contract may waive a condition precedent by taking actions that are

---

[3] The Franchise Agreement, Section 26.1, provided that Maryland law governs the construction and enforcement of the Franchise Agreement.  DE 56-16 at 61.

inconsistent with an intent to rely on the protections of that condition precedent." *Gray v. Philadelphia Contributionship*, 748 F. Supp. 3d 367, 374 (D. Md. 2024) (citing *Hovanian Land Inv. Grp.*, 25 A.3d at 983-85). While waiver of a condition precedent is ordinarily a question of fact, "[o]ccasionally, [ ] the waiver is so obvious that a ruling can be made as a matter of law." *Hovanian Land Inv. Grp.*, 25 A.3d at 984. This is such a case.

Notwithstanding the fact that plaintiff apparently never executed the VTA, defendants acted as though plaintiff had. Defendants admit that they made payments in accordance with the schedule outlined in the 2018 Promissory Note as required by the VTA, even if belatedly. DE 59 at 14. Through their actions, defendants appear to have waived the requirement of execution. Therefore, as a matter of law, defendants waived the condition precedent, and the VTA was effective.

Second, defendants maintain that even if the VTA was effective, it became null and void upon full payment of the 2018 Promissory Note in July 2019, pursuant to the 2018 Settlement Agreement. Defendants argue that even though payments under the 2018 Promissory Note were untimely, and they subsequently fell behind on BBF fees and royalty payments, plaintiff continued to accept payments, thereby waiving its rights under the VTA to terminate the Franchise Agreement without providing notice and an opportunity to cure. Thus, defendants assert that even if they were in default of their obligations under the Franchise Agreement as of March 4, 2024, they were entitled to notice and a 30-day opportunity to cure before termination.

"Under Maryland law, when a party continues to accept performance after an alleged breach, then the accepting party waives its right to terminate the contract, or to deny the continued performance." *Bunting Graphics, Inc. v. Whiting-Turner Contracting Co.*, 2025 WL 299211 at *17 (D. Md. Jan. 23, 2025); *see also Pumphrey v. Pelton*, 245 A.2d 301, 305-306 (Md.

6

1968) (holding that knowledge of a continuous breach constituted a "continuing waiver" of the breach, making a subsequent termination unreasonable). Thus, "if a party claims that the other has defaulted in its performance, but, nonetheless, continues to accept performance, that party cannot later terminate the other party for the alleged default it did not act upon." *Bunting Graphics, Inc.*, 2025 WL 299211 at \*17 (citing *Hovanian Land Inv. Grp.*, 25 A.3d at 986).

"Given the highly factual nature of the waiver inquiry, it is an uncommon case in which the issue can be resolved by summary judgment." *Hovanian Land Inv. Grp.*, 25 A.3d at 984; *see also Univ. Nat'l Bank v. Wolfe*, 369 A.2d 570, 576 (Md. 1977) (the question of "whether subsequent conduct of the parties amounts to a modification or waiver of their contract is generally a question of fact to be decided by the trier of fact."). This holds true here. It is undisputed – and indeed troubling – that defendants did not make timely payments according to the schedule set forth in the 2018 Promissory Note, consistently fell behind on royalty payments and BBF fees and allowed at least the playground on the premises to deteriorate into some state of disrepair. DE 61 ¶¶ 30, 39, 46-48. All of these lapses may have provided grounds for termination of the Franchise Agreement under the VTA, but plaintiff continued to accept payments after the December 31, 2018 deadline and did not invoke the VTA to terminate the Franchise Agreement until March 4, 2024 – nearly six years after entering into the VTA and five years after satisfaction of the 2018 Promissory Note. A reasonable juror could find that this constituted a waiver of plaintiff's right under the VTA to terminate the Franchise Agreement without providing notice and an opportunity to cure.

Both the VTA and the 2018 Settlement Agreement contain "non-waiver" language providing that "[t]he failure of [plaintiff] to enforce any term of this Agreement or the Franchise Agreement or the Ancillary Agreements shall not constitute a waiver of any rights or deprive

7

[plaintiff] of the right to insist thereafter upon strict adherence to the [sic] such Agreements or any other terms of this Agreement." DE 56-18 at 6; DE 56-19 at 4. "The party alleging waiver must show an intent to waive both the contract provision at issue and the non-waiver clause." *Hovnanian Land Inv. Grp.*, 25 A.3d at 984. "Non-waiver clauses, although not favored by courts, must be considered by the trier of fact." *Id.* Thus, the presence of the non-waiver clauses in the VTA and the 2018 Settlement Agreement demonstrates another issue of fact foreclosing summary judgment.

And this question raises others, including liability for liquidated damages. *See Merriweather Post Bus. Tr. v. It's My Amphitheater, Inc.*, 2020 WL 4530659 at *18 (Md. Ct. Spec. App. Aug. 6, 2020) ("where one party has materially breached a contract, the other party is no longer obligated to perform.").

Accordingly, plaintiff's motion for summary judgment is denied as to its claims for breach of contract.

### b. *Permanent Injunction*

"A party seeking a permanent injunction must demonstrate 'actual success' on the merits, rather than [the] mere 'likelihood of success' required to obtain a preliminary injunction." *Ass'n of Am. Publishers, Inc. v. Frosh*, 607 F. Supp. 3d 614, 618 (D. Md. 2022). Given the issues of fact as to plaintiff's breach of contract claims, plaintiff has not shown actual success on the merits and thus a permanent injunction is improper at this juncture.

### c. *Defendants' Counterclaims*

Defendants' first counterclaim is for breach of contract by which they seek damages for plaintiff's wrongful termination of the Franchise Agreement. The issues of fact that preclude summary judgment as to plaintiff's breach of contract claims similarly affect defendants'

counterclaim for breach of the Franchise Agreement.  Whether plaintiff waived its termination right under the VTA must be decided by the trier of fact before consideration of whether plaintiff breached the Franchise Agreement.

As to defendants' second counterclaim for breach of the implied covenant of good faith and fair dealing, "there is no independent cause of action at law in Maryland for breach of the implied covenant of good faith and fair dealing." *Mount Vernon Props., LLC v. Branch Banking And Tr. Co.*, 907 A.2d 373, 381 (Md. Ct. Spec. App. 2006).  Instead, breach of the implied duty of good faith and fair dealing is better viewed as "an element of another cause of action at law," such as breach of contract.  *Id.*  Accordingly, plaintiff's motion for summary judgment is granted as to defendants' second counterclaim.

Defendants' third counterclaim for conspiracy alleges that plaintiff conspired to cheat and defraud defendants out of their franchise so that a more favored franchisee could purchase the location.  The parties dispute which state's law applies to defendants' third counterclaim.  However, neither New York nor Maryland recognizes civil conspiracy as an independent tort.  *Est. of Greenwald v. Greenwald*, 2026 WL 836112 at *6 (Md. Ct. Spec. App. Mar. 26, 2026) ("A party alleging civil conspiracy will not succeed absent underlying tortious conduct"); *Generation Next Fashions Ltd. v. JP Morgan Chase Bank, NA.*, 698 F. Supp. 3d 663, 688 (S.D.N.Y. 2023) (Under New York law, "[a]llegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort.").  Defendants do not allege an underlying tort perpetrated by plaintiff.  Their counterclaims sound in contract, not tort.  Accordingly, summary judgment is granted for plaintiff as to defendants' third counterclaim for conspiracy.

Finally, defendants' fifth counterclaim seeks a declaratory judgment that plaintiff is barred from enforcing the terms of the Franchise Agreement – specifically the noncompete

provisions.  Given the issues of fact as to whether plaintiff properly terminated the Franchise

Agreement, the Court cannot declare the rights of the parties at this juncture.  Accordingly,

summary judgment for plaintiff is denied as to defendants' fifth counterclaim.

### *Conclusion*

For the reasons set forth above, plaintiff's motion for partial summary judgment is

GRANTED in part and DENIED in part.

**SO ORDERED.**

Dated: Central Islip, New York
        June 12, 2026

*/s/ Gary R. Brown*
GARY R. BROWN
United States District Judge